Crisp, *et al.* *vs.* Crisp, *et al.*

(Decided 22nd June, 1886.)

---

ROBERT F. CRISP, and others *vs.* ANNIE E. CRISP; ANNIE E. CRISP, Surviving Trustee, and the CENTRAL PRESBYTERIAN CHURCH OF BALTIMORE.

*Will—Bequest for a Church and Parsonage—Certainty— Valid bequest.*

A testator by his will, directed that his trustees should expend $50,000 in the purchase of a suitable lot of ground in or near Brooklyn, in Anne Arundel County, and should build thereon a Presbyterian Church and parsonage, $30,000 to be used for the church, and $20,000 for the parsonage and grounds. And the said trustees were authorized, empowered and directed, upon the completion of said church and parsonage; to make a good and sufficient conveyance of said church, parsonage, and grounds, and to turn over any balance of said sum of $50,000, remaining in their

Crisp, *et al.* *vs.* Crisp, *et al.*

hands, to such organization, or society, or association, of the Presbyterian Church, in the State of Maryland, as they in their judgment might see fit and deem best, to be used for the promotion of the worship of God, according to the forms and ceremonies of the Presbyterian Church, and for no other use whatsoever. And by a codicil it was provided: "In explanation to the bequest to the church, in case it being carried out, I wish and desire it to be a branch of the Central Presbyterian Church, Reverend Joseph T. Smith, pastor at the present time." The bequest was legalized by an Act of the General Assembly of Maryland. The Central Presbyterian Church of the City of Baltimore, is a body corporate, under the laws of Maryland, and Reverend Joseph T. Smith was at the date of the execution of said will pastor of that church, which at the date of the execution of the will, and thereafter was known by the name of the Central Presbyterian Church, in the State of Maryland. HELD:

That the object of the bequest, as explained by the codicil was legal, and sufficiently definite, and the bequest was valid.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*W. Benton Crisp,* and *Randolph Barton,* for the appellants.

*L. M. Reynolds,* and *S. Teackle Wallis,* for the appellees.

STONE, J., delivered the opinion of the Court.

A certain Richard O. Crisp, of Anne Arundel County, Maryland, died in 1881, having duly executed his last will and testament. In his will he provided that a certain farm that he owned in that county, should be held in trust by Annie E. Crisp and Frederick G. Crisp, trustees therein appointed, for the period of eighteen years, unless

within that time they should have an offer of one hundred thousand dollars for it. If that occurred, they were to sell it, and after disposing of fifty thousand dollars, part of the proceeds of sale, the will goes on to dispose of the remaining fifty thousand as follows:

"'The remaining fifty thousand arising from the sale of said farm, the said Annie E. Crisp and Frederick Grafton Crisp, and the survivor of them, and the heirs of the survivor and their successors, shall expend in the purchase of a suitable lot or parcel of land in or near Brooklyn, in Anne Arundel County, and shall erect and build thereon a Presbyterian Church and parsonage—thirty thousand dollars to be used for the church and twenty thousand dollars for the parsonage and grounds.

" And the said trustees are hereby authorized, empowered and directed, upon the completion of said church and parsonage, to make a good and sufficient conveyance of said church, parsonage and grounds, and to turn over any balance of said sum of fifty thousand dollars remaining in their hands, to such organization or society, or association of the Presbyterian Church in the State of Maryland, as they in their judgment may see fit and deem best, to be used for the promotion of the worship of God, according to the forms and ceremonies of the Presbyterian Church, and for no other use whatever. And the said trustees are hereby requested and directed to apply to the General Assembly of the State of Maryland, for the passage of such Act or Acts as may be necessary to enable them to execute this provision of my will. But if said farm cannot be sold for the sum of one hundred thousand dollars within eighteen years from the date of my death, then in that event, this trust will cease."

By the codicil he says:—"In explanation to the bequest to the church, in case it being carried out, I wish and desire it to be a branch of the Central Presbyterian Church, Reverend Joseph T. Smith, pastor at the present time."

The farm was sold within the prescribed time for the hundred thousand dollars, and after the investment of the fifty thousand dollars for the use of his wife, there remained a large sum, about fifty thousand dollars, in the hands of Annie E. Crisp, the surviving trustee, to be applied according to the provisions of the will above quoted. The heirs of Richard O. Crisp, however, filed a bill in equity against the trustees claiming the money so dedicated to this trust, upon the ground that such bequest was void for indefiniteness and uncertainty, inasmuch as the real beneficiaries under the said provisions have no corporate or other existence. The Court below decided that the bequest was a valid one and dismissed the bill, and the heirs have appealed to this Court. The *only* question therefore before us is whether such bequest is valid.

It is admitted, that the Central Presbyterian Church of the City of Baltimore is a body corporate, duly incorporated under the laws of Maryland, and that Rev. Joseph T. Smith was at the time of the execution of said will, pastor of that church. That said Central Presbyterian Church was, at the date of the execution of said will, and now is, the only Presbyterian Church known by the name of the Central Presbyterian Church in the State of Maryland. That the testator was a member of said church, and the bequest had been legalized by Act of the General Assembly of Maryland, passed 1882.

In his will the testator provided, that the trustees he had selected should build a church and parsonage in or near Brooklyn, in Anne Arundel County, and after they were built, to convey the same to such organization or society of the Presbyterian Church in Maryland, as they, the trustees, deem best.

It would be idle to consider the question of what *might have been* the proper construction of the will, if it stood alone, because whatever doubts may have existed, looking only at the will, have been, we think, dissipated by the

codicil. This codicil seems to have been made expressly for the purpose of dispelling any doubt or uncertainty as to what organization or society of the Presbyterian Church in Maryland, he wished this property to be conveyed. He says he desires it to be a branch of the Central Presbyterian Church, of which the Rev. Joseph T. Smith was then the pastor. The obvious meaning of the testator is, that the church and parsonage so erected should *belong* to the Central Presbyterian Church of Baltimore, of which Mr. Smith was then pastor. A " branch" church necessarily implies a parent church to which it belongs.

If the will is rather inartificially drawn, its meaning is, we think, clear. He gave this property to the corporation known as the Central Presbyterian Church of Baltimore, to hold and be used by them for the worship of God, according to the forms of the Presbyterian Church, and the next question that arises is, whether there is anything so uncertain in such a devise, that a Court of equity could not enforce the trust; for we may concede that there is a trust.

The testator provided, as we have seen, that the church should be built by his trustees, and then conveyed by them to the Central Presbyterian Church, and to be used by such church for the worship of God, according to the Presbyterian form of worship. Had he pursued a different course and given the $50,000 directly to the Central Presbyterian Church of Baltimore, and directed that corporation to erect a church and parsonage at Brooklyn, in Anne Arundel County, the legal question would have been the same.

"If," says this Court, in the case of *Barnum, et al. vs. Mayor, &c. of Baltimore, et al.*, 62 *Md.*, 275, " there be parties capable of taking the subject-matter of the trust, and objects legal and definite, to be subserved or benefited by its execution, so that a Court of equity may take cognizance of and enforce the trust, these are the essentials,

and only essentials, to the validity of the trust, though the object of the trust be in its nature charitable."

We have already seen that there is a party capable of taking the subject-matter of the trust. That the object was legal and sufficiently definite, there is but little doubt. The testator prescribed the place where the church should be built, the amount of its cost, and the purpose to which it should be dedicated. What more ever was, or could be done by a testator who desired to devote a portion of his property to a charitable use?

He had the right to do as he pleased with his property, provided his object was a legal one, and his whole object will be accomplished when the church is built and conveyed to the Central Presbyterian Church of Baltimore.

This direction of his can certainly be enforced by a Court of equity. It may so happen that a worshipper may never enter the doors of the church or a pastor the parsonage; but such a possible contingency will not prevent a Court of equity from decreeing that the present and clearly defined purpose of the testator shall be carried out. The books are full of cases where money or property is left to build hospitals for the afflicted, and schools for the promotion of education.

In all the thousands of cases where these donations have been made, and where the testator has declared that the hospital should be erected for a certain class of the afflicted, and that the school-house should be built for a certain class of scholars, it has never been considered, that the devise should fail because the school-house might never have a scholar, or the hospital an inmate.

The testator can provide the benefit for the community, but he cannot compel them to accept it. So, when Mr. Crisp provided the means for building the church, selected the place where it should be located, and appointed the agents to do the work, and designated who should own and hold it, he has done nothing that the Courts cannot en-

force. All this was manifestly intended for the use and benefit of the people of Brooklyn. Whether they will use as directed by him and appreciate his noble charity, rests with them; at least that question cannot arise now. That use is certain. The forms of the worship of the Presbyterian Church are as well known as any other forms of worship.

This case differs entirely from the case of *Church Extension of the M. E. Church, et al. vs. Smith, &c.,* 56 *Md.,* 362. There the testator gave his money to be loaned to *necessitous* Methodist Churches. As no one could define what is a *necessitous* church, the devise was held void for uncertainty. There is nothing new in that decision, but it is strictly in the line of many previous cases. In this case, the amount of the whole will and codicil is, that the testator gave a certain sum of money, to build in a certain place, a Presbyterian Church, to be held by a *certain* corporation. All these are definite and enforceable by a Court, and come strictly within the rules, and the decree must be affirmed.

*Decree affirmed.*

(Decided 22nd June, 1886.)