Walter, *et al.*, *vs.* Alexander and wife.—1844.

MARGARET WALTER AND OTHERS' LESSEE, *vs.* ASHTON ALEXANDER AND SARAH ROGERS ALEXANDER.—*December,* 1844.

Where a defendant offers in evidence collaterally, proceedings in ejectment, and the plaintiff prays the court to instruct the jury, that they do not vest any title in the defendant, and are no bar to the plaintiff's right, such a prayer is not too general, under the act of 1825, ch. 117.

This court must assume, under such a prayer, that every ground which established either of the points relied on in it, was considered and determined by the county court.

The statute 4 *Geo.* 2, *ch.* 28, requires, that to render a judgment by default, *conclusive* upon the rights of a tenant, and bar his future recovery of the demised premises, it shall be made appear to the court where the suit is depending, by affidavit, that half a years rent was due before the declaration was served, and that no sufficient distress was to be found upon the demised premises, countervailing the arrears of rent then due, and that the lessor in ejectment had power to re-enter; in every such case the lessor shall recover judgment and execution, in the same manner, as if the rent in arrear had been legally demanded.

To make a judgment by default, a bar to a lease under the statute of 4 *Geo* 2, the record must disclose such facts and circumstances, as will justify the court in believing, or assuming, that in rendering its judgment, the court below designed to exercise the authority conferred on it by the statute.

When all the proceedings in ejectment, until long after the judgment by default, show it to have been an ordinary case of ejectment, having no connexion with the statute, there is nothing to warrant the assumption, that the judgment was rendered under the authority of the statute.

Where the affidavit required by the statute, was filed in vacation, at a different term from that of the judgment, and more than ten months after its rendition; and which, according to the proof, was never shown to the county court, this court will not assume the judgment was given on the affidavit, according to the obvious import and design of the statute.

The affidavit in such cases, should be filed before the judgment by default is entered, or some time during the term at which it was rendered; so that before the judgment became absolute, the court may have had an opportunity of inspecting and adopting the affidavit, as the basis of its judgment.

The court will not presume, that an affidavit was filed, pursuant to the statute, after a lapse of seventeen years, where it clearly appears, that in fact it was not so filed; yet if filed in time, it will be presumed to have discharged their duty in relation to it.

The construction of a statute in every part of the State must be the same; a practice in a particular part of the State, inconsistent with its letter and spirit, cannot repeal it.

The county court ought not to be called upon, to submit to the finding of the jury, a fact, of which there was no testimony.

A party purchased the reversion in fee of a lot, described as subject to a ground rent, the deed for the reversion being for less ground than the original lease. Afterwards, the rent not being paid, the purchaser of the reversion, brought his action of ejectment to recover possession; declared according to the lease, and recovered judgment by default, and possession. Some years after, the lessee brought another action for the premises described in the lease. HELD: that the recovery in the first action, being for more land than the plaintiff was entitled to, was no evidence that the whole reversion of the leased premises had been conveyed to the plaintiff in that action.

APPEAL from *Baltimore* County Court.

This was an action of *ejectment,* brought on the 19th April 1841, by *John Doe,* lessee of the appellants. The plaintiff declared for the following lot:

Beginning, for the same, on the east side of *South street;* south, three and three-quarters degrees east, seventy-nine feet, three inches, from the south-east intersection of *South* and *Water streets;* and running thence bounding on *South street,* south, three and three-quarters degrees east, twenty-six feet, nine inches; thence north, eighty-six and a quarter degrees east, seventy-nine feet six inches, to the divisional line between *Daniel Bowley* and *Jno. McClure;* thence, bounding on said line, north, twenty-six feet nine inches; and thence, by a straight line to the beginning; with the appurtenances situate, and being in *Baltimore* county aforesaid, which *Margaret Walter,* deceased, in her life time, had demised to the said *John Doe,* for a term which is not yet expired; and counted upon separate demises, made on the 1st March 1840, by each of the lessors of the plaintiffs, the appellants in this cause.

The tenants in possession, the appellees, appeared and pleaded *non cul,* on which issue was joined.

1ST EXCEPTION. The plaintiffs, to support the issue on their part, gave in evidence to the jury, that *Daniel Bowley* being seized in fee of the lot of ground for which this suit was brought, executed and delivered the following lease for the same:

This indenture, made the 21st day of December 1798, between *Daniel Bowley* of, &c., and *Solomon Etting* of, &c., witnesseth, that the said *Daniel Bowley*, for, and in consideration of the payment of the rents, and performance of the covenants, hereinafter mentioned, on the part of the said *Solomon Etting* and his assigns, to be paid and performed; hath demised, &c., and by these presents doth demise, &c., unto the said *Solomon Etting*, his, &c., all that lot of ground situate in the city of *Baltimore*, containing, &c. Beginning, for the same, on the east side of *South street*, south, three and three-quarter degrees east, seventy-nine feet three inches, from the south-east intersection of *South* and *Water streets;* and running thence, bounding on *South street*, south, three and three-quarter degrees east, twenty-five feet nine inches; thence north, eighty-six and a quarter degrees east, seventy-nine feet six inches, to the division line, between *Daniel Bowley* and *John McLure;* thence, bounding on said line, north twenty-five feet; and thence, by a straight line, to the place of beginning: being lot, No. 2, as by a private plot or survey thereof, made and certified by *Jehu Bouldin*, on the 5th day of December 1798; the plot, thereof, now in the possession of said *Etting*, reference thereto, being had, will more fully appear. To have and to hold the said lot of ground and premises, with their and every of their appurtenances, unto the said *Solomon Etting*, his, &c., from the day next before the day of the date of these presents, for and during, and until the full end and term of ninety-nine years, from thence next ensuing, fully to be complete and ended; yielding and paying therefor, to the said *Daniel Bowley*, his heirs and assigns, the yearly rent or sum of $100. The lease then reserved a right to re-enter for non payment of rent, &c.

The plaintiffs further proved, that such lease, by various mesne assignments, became vested in *George G. Krause*, who duly made and published the following will, which among others, contained the following clause:

*Item.* I give to the children of my oldest daughter, *Margaret Walter*, the brick warehouse in *South street*, with its appurtenances thereon, during the residue of the term origi-

nally letten, with the benefit of renewal forever, subject to the yearly rent reserved thereon. The rent thereof, my son-in-law, *Philip Walter*, shall receive, as soon as he and my daughter, *Margaret*, keep house for themselves, and not sooner.

*Item.* I give and devise to my beloved wife, all my household and kitchen furniture; also, all the stock of horses, cattle, sheep, hogs, and other articles on my farm, during her natural life; and after her death, the whole of her property to be equally devided among my three daughters. Should there be any debts left after my death, it is my will, that all rents arising from said houses, shall be used for defraying such debts; and afterwards, my dear wife shall receive all the rents, until either of my two daughters shall marry.

*Item.* I do hereby nominate, constitute and appoint *George Schauber* and *John M. Dosh*, executors. In testimony whereof, I have hereto set my hand and seal, this 30th day of October 1811.

And died; that the plaintiffs are the children of *Philip* and *Margaret Walter*, mentioned in said will, and were minors until 1835; and also proved, that shortly prior to the institution of this ejectment, the plaintiffs offered to *Ashton Alexander*, one of the defendants, who is the husband of *Sarah R. Alexander*, formerly *Sarah R. Merryman*, the other defendant; that said *Alexander* should charge the rents of said property under said lease, from the last day on which payment was made, up to the time of said offer, and all interest thereon, and all expenses incurred by said *Alexander* or his wife, and the interest and credit of the rents of said property, since it was in possession of said *Alexander* or his wife, with interest thereon, and that the plaintiff would pay the difference, if any, whatever it might be, which proposal was refused.

The defendants, to support the issue on their part, offered in evidence the following copy of a deed, from *Daniel Bowley* to *John Merryman*, duly executed, acknowledged and recorded, dated 15th August 1806; conveying the reversion, in fee, to the said *J. M.* and *his heirs*, of the following lot, to wit: Beginning for the same, on the east side of *South*

*street;* south, three and three-quarter degrees east, seventy-
nine feet three inches, from the south-east intersection of *South*
and *Water streets ;* and running thence, bounding on *South
street;* south, three and three-quarter degrees east, twenty-five
feet nine inches; thence north, eighty-six and a quarter degrees
east, seventy-nine feet six —; to the division line between
*Daniel Bowley* and *John McLure;* thence, bounding on said line,
north, twenty-five feet; and thence, by a straight line, to the
beginning : being lot, No. 2 ; as, by a private plat or survey,
thereof made and certified by *Jehu Bouldin*, on the 5th day
of December 1798 ; the plat therof, now in possession of said
*Etting*, reference being thereto had, will more fully appear ;
together, &c.

And also offered in evidence, a duly authenticated copy of
the last will and testament of said *John Merryman;* by which,
the said lot was devised to the said *Sarah R. M.* in fee; and
proved, that the said *Sarah*, in said will mentioned, is one of
the defendants in this case.

The defendants further offered in evidence, the following
proceedings of recovery in ejectment, of the premises men-
tioned in the declaration ; being an action commenced by the
said *S. R. M's* lessee, against *Isaac J. Smith*, on the 17th
March 1823, for all that lot or parcel of ground, lying and
being in the city of *Baltimore, in Baltimore* county aforesaid:
Beginning for the same on the east side of *South* (now called
*Belvidere*) *street;* south, three and three-quarter degrees east,
seventy-nine feet three inches, from the south-east intersection
of *South* and *Water streets;* and running thence, bounding on
*South street* south, three and three quarter degrees east, twen-
ty-six feet nine inches: thence north, eighty-six and a quarter
degrees east, seventy-nine feet six inches, to the division line,
between *Daniel Bowley* and *John McClure ;* thence bounding
on said line north, twenty-six feet nine inches ; and thence by
a straight line to the beginning, with the appurtenances; which
*Sarah Rogers Merryman* demised, to the said *John*, for a term
of years ; which is not yet expired, &c.   The sheriff returned
the copy of the declaration: "Copy set upon the premises, 17th

March 1823." A judgment by default at March term 1823, was rendered against the casual ejector. The day of the demise was 1st January 1816.

On the 12th February 1824, the said *John Denn,* lessee as aforesaid, by his attorney aforesaid, filed in court here the following affidavit, to wit:

*Sarah R. Merryman vs. Isaac J. Smith.* Action of ejectment in *Baltimore* county court. *Sarah Rogers Merryman,* lessor of the plaintiff in this cause, made oath on, &c., that at the time of issuing the declaration in this cause, and before the time of serving a copy of said declaration on the tenant in possession of the premises, in said declaration mentioned, there was and now is due, and in arrear to the said *Sarah,* as landlord of said premises, the sum of $300, for three years rent of said premises; and the further sum of $49.50, balance due and in arrear for one other year's rent thereof; and this deponent further saith, that at the time of serving the copy of said declaration on the tenant in possession of the premises, in said declaration mentioned, she, this deponent, was and now, is landlord of said premises, and the said *Isaac J. Smith* was the tenant in possession thereof; and that she then had, and now hath power to re-enter on said premises for non-payment of the said rent; and this deponent further saith, that at the time, and before said ejectment was served, no sufficient distress was to be found on said premises, and countervailing the arrears of rent then due to this deponent. Sworn this 3rd day of February, in the year 1824, &c. And on the same day, 12th February 1824, the plaintiff sued out a writ of *hab. fac. pos.,* under which, possession was given, on the 24th February 1824.

And also proved the writ of possession; and further offered evidence, that the said *Sarah,* mentioned in said recovery in ejectment, intermarried before the institution of this suit, with the defendant *Ashton Alexander,* and that said *Sarah* and *Ashton,* have been in possession of the premises declared for in this case, ever since possession was delivered under the writ of possession, issued on said judgment in ejectment, and that

27  v.2

September term 1823, continued to the fourth Monday of March 1824.

The plaintiff. further offered in evidence, that the court was not in session on the day when the affidavit, stated in the record, was filed, and when the execution issued.

The defendant offered evidence, that the terms of *Baltimore* county court have always been adjourned over from the end of one term to the beginning of another. And the defendant offered evidence to the court, by various attorneys at law, of the practice of *Baltimore* county court, as to the time of filing the affidavit, under the statute 4, *Geo.* 2. The practice was stated to be, to file the affidavit at any time before suing out the writ of possession. The defendant, also, filed copies of the docket entries in various actions of ejectment, where judgments, *nisi*, had been entered.

Whereupon the plaintiffs made the following prayers to the court:

The plaintiffs pray the court to instruct the jury:

1st. That the proceedings in ejectment, given in evidence in this cause of *Merryman's lessee vs. Smith*, do not vest any title in said *Merryman*, and are no bar to plaintiffs' right of recovery in this case.

2nd. That as the defendants have produced the record of the ejectment suit between *Merryman's lessee* and *Walter*, for the lot in question in this case, and as a part of that record, the affidavit of the plaintiff's lessee in that case, dated the 3rd February 1824, and filed in court in said case on the 12th day of the same month, that then, in point of law, said affidavit was too late to make the judgment in said case conclusive against the lessee; and the lessors of the plaintiff, in the present suit, claiming the said lot under the lease from *Bowley* to *Ettings*, as a judgment in ejectment, under the statute 4, *George 2nd*, and that such affidavit having been produced by defendants, the jury are not bound to presume, that any other affidavit to obtain or justify said judgment, under said statute, was filed or made before the court rendering the said judgment.

3rd. That the judgment, *nisi*, against the casual ejector, in the ejectment referred to in the preceding prayer, became a final judgment, after the first day of the term of the court, in which the same was rendered, next succeeding the term at which said judgment was rendered, and that consequently, the said judgment became an absolute judgment, after the first day of the term of said court, which commenced in September 1823; and that the affidavit made by the lessor of the plaintiff in that suit, on the 3rd February 1824, and filed, in said suit, on the 12th of that month, was not in time to authorise such judgment, under the statute of *4th George 2nd*, so as to make the same, and the proceedings in the said case, final and conclusive upon the lessee of the lessor of the plaintiff in that case, and those claiming under the lease.

4th. And the plaintiff further prays the opinion of the court to the jury, that if they find from the evidence, that the affidavit filed in the ejectment suit aforesaid, of *Merryman's lessee*, was not, in fact, submitted to the court by which said judgment was rendered or approved of, or seen by said court, or held by it to be sufficient under the said statute of *George the 2nd;* and if they also find, that no other affidavit in said case was made, that then said proceedings in ejectment are not conclusive upon the rights of the lessor under said statute.

The defendants then prayed the court to direct the jury, that if they should find, that the defendant, *Sarah,* became entitled to the reversion of the ground declared for, as stated in the testimony, and recovered possession, and took, and has ever since held possession thereof, in the year 1824, as shewn by the record of recovery, given in evidence, and that this action was instituted on the 19th day of April 1841, then the plaintiff is not entitled to recover.

The court (MAGRUDER and PURVIANCE, A. J.,) refused the prayers of the plaintiffs.

The prayer of the defendant was granted.

The plaintiffs excepted on both grounds, and the verdict and judgment being against them, they prosecuted the present appeal.

The cause was argued before ARCHER, DORSEY, CHAM-
BERS and SPENCE, J.

By RICHARDSON and R. JOHNSON for the appellants, and
By MEREDITH and MAYER for the appellees.

DORSEY, J., delivered the opinion of this court.

The first prayer of the plaintiff is, "that the proceedings in
ejectment, given in evidence in this cause, of *Merryman's
Lessee* vs. *Smith*, do not vest any title in said *Merryman*, and
are no bar to plaintiff's right of recovery in this case." The
objection taken to this prayer as being too general, in not suffi-
ciently presenting, according to the act of 1825, *c.* 117, the
point, which the county court are required to decide, we think
cannot be sustained. The points, on which the decision of
that court were demanded, were, that the proceedings in the
ejectment referred to did not vest any title in *Merryman*, and
formed no bar to the plaintiff's right to recover. Every ground,
therefore, which established either of those points, we must
assume to have been considered and determined by the county
court. It was very properly conceded in the argument, that if
these proceedings in ejectment, offered in evidence to shew
title in the defendants, were not had under the statute of 4
*Geo.* 2, *c.* 28, that the judgments therein rendered, vested no
title in the defendant's wife, and formed no bar to the plain-
tiffs right to recover. This statute requires, that to render a
judgment by default conclusive upon the rights of the tenant,
and bar his future recovery of the demised premises, it shall
be made appear to the court, where the said suit is depending,
by affidavit, that half a years rent was due before the declara-
tion was served, and that no sufficient distress was to be found
upon the said demised premises, countervailing the arrears then
due, and that the lessor or lessors in ejectment, had power to
re-enter; in every such case, the lessor or lessors, in ejectment,
shall recover judgment and execution, in the same manner as
if the rent in arrear had been legally demanded, and a re-en-
try made. To give to this judgment the efficacy ascribed to

it, it must appear to this court to be a judgment rendered under the statute of 4 *Geo.* 2; or, in other words, the record must disclose such facts and circumstances, as would justify us in believing or assuming, that in rendering its judgment, the court below designed to exercise the authority conferred on it by the statute. The record, before us, discloses nothing which could warrant us in any such assumption or belief. All the proceedings in ejectment, until long after the judgment, shew it to have been an ordinary case of ejectment, (having no connexion with the statute,) the judgment in which, is conclusive upon no body. Upon what principle, then, can this court be called on, where an affidavit was filed in the case, in vacation, at a different term from that of the judgment; and more than ten months after it was rendered, and which according to the proof was never shown to the county court, to believe or assume, that its judgment was given on the affidavit thus introduced into the cause? According to the obvious import and design of the statute of 4 *Geo.* 2, *c.* 28, we think the affidavit should be filed before the judgment by default is entered, or some time during the term at which it was rendered; so that, before it became absolute, the court may have had an opportunity of inspecting and adopting the affidavit, as the basis of its judgment. That such is the construction of this statute in *England,* see *Adam's on Ejectment* 159, *and Doe. on Dem. of Hitchings and Another, vs. Lewis* 1 *Burr.* 614.

It has been contended in this case, that after the lapse of seventeen years, during which the defendants have been in the undisturbed possession of the demised premises, this court ought to presume the filing of an affidavit pursuant to the statute. The proof in this case having so clearly disproved such filing of the affidavit, the court has no ground left for such a presumption to rest on. This case differs essentially from the case above mentioned, of 1 *Burr,* 614, referred to as warranting the presumption which this court has been called on to make. There, the question arose upon a case stated, in which the proceedings and judgment in ejectment, were stated to have been "under and by virtue of the statute

of 4 *Geo.* 2, *c.* 28;" and that fact was strongly relied on by the court, which, after an acquiescence in the landlord's possession, under the judgment of almost twenty years, determined that it was not necessary that the landlord should have produced the affidavit on the trial, in which the proceedings in ejectment were offered as evidence.

We must not be understood as deciding, that to give effect and validity to the judgment of the court, in a proceeding in ejectment, under the 4 of *Geo.* 2, when judgment is incidentally brought before the court, (as in this case,) as evidence of title, that it must appear upon the face of the proceedings, that all the requisitions of the statute have been complied with; that there is no error in the judgment of the county court, which upon appeal or writ of error would cause its reversal. All that we mean to decide is, that to give to a judgment by default in ejectment, under the statute of 4 *Geo.* 2, the conclusiveness designed to be imputed to it by the statute, it is necessary that the affidavit should be filed or presented to the court before the judgment is rendered, or some time during the term at which it was given; so that before it became absolute, the court may have had an opportunity of inspecting and adopting the affidavit as the basis of its judgment, and that such judgment, when offered in evidence, as in this case, was sustained by such an affidavit, as satisfied the court before which it was offered in evidence, that the court by which it was rendered, intended it as a judgment under, and in virtue of the statute 4 of *Geo.*, 2, *c.* 28.

Nor do we mean to say, that it is requisite that the affidavit should appear to have been presented to the court. If filed at the proper time, the court will be presumed to have discharged their duty in relation to it.

The testimony offered on the part of the defendants, of the loose practice sometimes prevailing in the city of *Baltimore,* of filing the affidavit long after the rendering of the judgment, or as the witnesses state, at any time before the issuing of the writ of *habere facias possessionem,* can have no influence on the determination of the case before us. The construction of

the statute must be the same in every part of the State; and were it otherwise, the practice referred to, is so entirely inconsistent with both the letter and spirit of the statute, that to sanction such a practice would be, *pro tanto*, to repeal the statute. We think the county court erred in refusing to grant the appellant's two next prayers; for the reasons we have stated, in the consideration of its refusal to grant his first prayer.

The court below, also erred, in their refusal of the appellant's fourth prayer; because, from the uncontradicted record evidence in the cause, it could not have worked injustice to the appellees, but might have operated most prejudicially to the rights of appellant. Under the opinion of this court, the proceedings and judgment in ejectment, relied on by the appellees, formed no bar to the plaintiff's recovery, and the jury were not at liberty to find the filing of any other affidavit. And yet, if that prayer had been granted, the jury would have been authorized in finding, that these proceedings in ejectment were a conclusive bar to the rights of the appellant; if they found that the affidavit, no matter at what time, had been submitted to the court, or approved of, or seen by it, or been held by it sufficient, under the said statute of *George 2nd;* or if the jury found that any other affidavit had been made in the case, no matter when made, or what it might be.

The prayers of the appellant having been rejected by the county court, the appellees prayed the court to direct the jury, that if they should find that the defendant, *Sarah,* became entitled to the reversion of the ground declared for, as stated in the testimony, and recovered possession, and took, and has ever since held possession thereof, in the year 1824, as shown by the record of recovery given in evidence, and that this action was instituted on the 19th day of April 1841, then the plaintiff is not entitled to recover: which prayer was granted, and in doing so, the county court erred, for the reasons stated by us in our examination of the courts refusal of the appellant's first prayer. It also erred for another reason. It called on the court, to submit to the finding of the jury, a fact of which there was no testimony; but which was conclusively

disproved by the testimony of both parties.  It required the court to direct the jury, that if they should find that the defendant, *Sarah*, became entitled to the reversion of the ground, declared for, &c., then the plaintiff is not entitled to recover. Both the lease from *Daniel Bowley* to *Solomon Etting*, and the deed for the ground rent, and reversion from *Daniel Bowley* to *John Merryman*, under whom the defendant *Sarah* claims title, shew, that she was not entitled to the reversion of the lot of ground for which the ejectment was brought; but for a lot of different and smaller dimensions.   And it is somewhat remarkable, that the alleged recovery of the lot of ground, by *Sarah*, the defendant in the action of ejectment under the statute of 4 *Geo.* 2, *c.* 28, was not of the lot leased, as aforesaid, by *Daniel Bowley*, and to the ground rent and reversion of which she was entitled; but of a lot of larger dimensions.

Dissenting from the county court, in its refusals to grant all the prayers of the plaintiff, and in its granting of the defendants prayer, we reverse its judgment.

JUDGMENT REVERSED AND PROCEDENDO ISSUED.