CHARLES T. BRANDT, INC., *v.* YOUNG WOMEN'S CHRISTIAN ASSOCIATON.

[No. 84, October Term, 1935.]

608

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Warren N. Arnold,* with whom was *G. Everett Siebert* on the brief, for the appellant.

*Albert C. Ritchie,* with whom were *Ritchie, Janney, Ober & Williams* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City for the specific performance of an agreement for the sale by the plaintiff to the defendant of a lot of ground, and the machinery and equipment contained in the building thereon, from which the defendant ap-

peals. The defendant is not resisting compliance with its agreement to buy because it rues its bargain, but because it alleges that the plaintiff cannot convey a good and merchantable title. In other words, it has come to this court for a certificate of title.

The "Young Women's Christian Association of Baltimore City" was incorporated under the General Laws of this State March 20th, 1833, "for the improvement and education of young women having in view the improvement of the condition of the working women of Baltimore." The charter was later amended, and the corporate powers increased, by the Acts of Assembly of 1908, ch. 95, the Acts of 1914, ch. 551, and the Acts of 1924, ch. 421. It is not contended that the corporation is not charitable within the meaning of the law, nor could it be questioned, so that it will not be necessary to discuss that feature of this case, though its purposes and activities are set out fully in the bill of complaint.

William F. Airey, late of Baltimore City, deceased, died January 5th, 1920, leaving a last will and testament, whereby, after an annuity of forty dollars a month to Beulah Redmond, to be paid out of the income of the estate, and numerous bequests to relatives, he devised and bequeathed the residue of his estate as follows:

"All the rest and residue of my estate, I give, devise and bequeath unto the Young Women's Christian Association of Baltimore City, a body corporate, in trust and confidence, to invest and reinvest the corpus and all income derived therefrom until the corpus together with the income thereof shall amount to Two Hundred Thousand Dollars.

"I further direct that the said body corporate shall continue to hold said fund of Two Hundred Thousand Dollars in trust, and to use all the income derived therefrom for the use and benefit of the said body corporate, said income to be used and employed in such manner as the officers and directors of said body corporate shall deem proper. It being my will and desire that the principal sum of Two Hundred Thousand Dollars shall always re-

main intact and never be used. It is further my will that said fund shall be known as the 'William F. Airey Endowment Fund.' "

He gave his "trustee * * * full power to sell and dispose of any part or all of said trust estate, by sale, lease or in any other manner," and appointed the Young Women's Christian Association of Baltimore City executor of the will.

Amongst the investments of the estate at the testator's death was a ground rent on a fee simple property located at the corner of Ridgely and Bush streets in Baltimore City. The ground rent and taxes having been long in default, the plaintiff brought suit in ejectment against William G. Blandford, the occupant of the premises, and others interested in the leasehold, and recovered judgment against William G. Blandford, the others disclaiming any interest, for the land claimed in the declaration and $6,102.16 damages and costs, and afterwards, on October 2nd, 1934, a writ of possession was issued, and possession of the premises the day following given the plaintiff. Beulah Redmond, by release dated June 5th, 1935, released the property mentioned from any charge or lien on account of her annuity.

On the 21st day of February, 1935, the plaintiff entered into an agreement, in its corporate name, with the defendant, to sell to it the property mentioned, by which the defendant agreed to buy at the sum of $18,000. The agreement also included the sale and purchase of the machinery and equipment on the premises at the additional sum of $5,000, the sale of the real estate being conditioned on the delivery of the personal property, which was subject to an execution on the judgment. The agreement required the payment of $1,000 when the defendant was notified by the plaintiff or its agent (notice was given by plaintiff's counsel in this case) that the machinery and equipment were ready for delivery, for which payment was made, and within thirty days thereafter the sale of the real estate was to be consummated by the payment of $5,000, in all $6,000, on account of the purchase money,

the execution of a purchase-money mortgage for $12,000, and the payment for the personal property in cash. After the payment of $1,000 on account of the purchase money for the real estate, the defendant advised the plaintiff of its unwillingness to consummate the sale on the ground of uncertainties and defects in the title. The bill for specific performance of the contract of sale and purchase was then filed against the defendant, and an answer filed by the defendant, which attacked the will of William F. Airey, and questioned the validity of the judgment by which, through execution and sale to the plaintiff, title was acquired by it to the machinery and equipment. Other questions were raised by the bill, answer, and briefs, but with decisions favorable to the plaintiff on the two mentioned, the other contentions do not arise, and it would be superfluous to discuss them.

The defendant's chief contention is that under the will of William F. Airey the devise was to the beneficiary in trust, and the trust void, but it seems to us to answer its own contention when it says, in its brief, "if the property is given to a charitable corporation in trust for its general uses, without specifying any particular purpose for which it is to be used, no trust is said to be created. Since, under these circumstances, there is no separation of the legal estate from the beneficial enjoyment, it is generally held that no trust can exist, and the corporation takes an absolute interest in the property," and this is what the plaintiff contends and the chancellor held.

The rule with respect to such trusts, so-called, in this state, as stated by Mr. Miller, *Construction of Wills*, p. 458, is that, "the same person cannot be both trustee and *cestui que trust;* in a trust there must be a separation of the legal estate from the beneficial enjoyment, and a trust cannot exist when the same person possesses both; if the entire legal and equitable interests happen to meet in the same person, the equitable is ordinarily merged in the legal." There are exceptions, however, when other persons become interested, as in *Milholland v. Whalen,* 89

Md. 212, 218, 43 A. 43, and the recent case of *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75.

In the Airey will there are no restrictions to the purposes to be served by the income derived from his estate, except that it is "to be used and employed in such manner as the officers and directors of said body corporate shall deem proper," and as they are only authorized by the charter and by law to function in their corporate capacity, the bequest is as general as if made to the corporation for its general purposes, which are those of a charitable corporation. *Baltzell v. Church Home & Infirmary,* 110 Md. 244, 274, 73 A. 151, 155; *Eutaw Place Baptist Church v. Shively,* 67 Md. 493, 494, 10 A. 244; *Woman's Foreign Missionary Society v. Mitchell,* 93 Md. 199, 206, 48 A. 737.

The other contention with respect to the validity of the trust is that it, in terms, requires the fund to be kept intact, only the income to be used, and that it therefore violates the rule against perpetuities, the answer to which is found in *Baltzell v. Church Home & Infirmary,* 110 Md. 244, 269, 73 A. 151, 155, where this court said, and here repeats: "The fact that it is directed to be kept as a separate fund, and the income to be used for the purposes named, can make no difference, provided those purposes, or some of them, be within the object of the appellees' incorporation."

This will, with respect to the provision that the estate be kept in a separate fund, and the income only used, practically has its counterpart in so many cases in this court, in which the wills were upheld, that it would be but useless repetition to here rehearse their provisions. It is only necessary to refer to *Barnum v. Baltimore,* 62 Md. 275; *Eutaw Place Baptist Church v. Shively,* 67 Md. 493, 10 A. 244; *Erhardt v. Baltimore Monthly Meeting of Friends,* 93 Md. 669, 49 A. 561; *Baltzell v. Church Home & Infirmary,* 110 Md. 244, 73 A. 151 (where the bequest was required to be kept in a separate fund, with a narrower restriction than here as to the objects and purposes to be served) ; *Conner v. Trinity Reformed Church,* 129

Md. 360, 99 A. 547; *Board of Foreign Missions v. Shoe-maker*, 133 Md. 594, 105 A. 748. See, also, *Art Students' League v. Hinkley* (D.C.) 31 Fed. (2nd) 469, affirmed (C. C.A.) 37 Fed. (2nd) 225.

On the authority of the decisions in the cases cited, and many more could be named, we must hold that the object of the bequest was within the corporate powers of the appellee, that it took an absolute estate in fee, and did not violate the rule against perpetuities.

The other contention of the appellant is that the eject-ment proceedings "were fatally defective because of (a) plaintiff's failure to file required affidavit and (b) appel-lee was not proper party plaintiff." The second reason here assigned has already been discussed and decided the gift was absolute, therefore the plaintiff could sue its corporate name.

It is provided in ejectment cases between landlord and tenant, by the Acts of 1929, ch. 406 (Code, art. 75, sec. 78), that "in case of judgment against the defendant for non-appearance, if it shall be made to appear to the court where said suit is depending, by affidavit, or be proved upon the trial in case the defendant appears, that half a year's rent was due before the said declaration was served and that the lessor or landlord had power to re-enter, then and in every such case the lessor or landlord shall recover judgment and execution in the same manner as if the rent in arrear had been legally demanded and a re-entry made." The affidavit just mentioned was not made. Instead the plaintiff produced the witnesses in court, who testified to the fact of default in the payment of rent for over six months, and to the damages sustained by the plaintiff. But it is also provided by section 307, article 4 of the Code of Public Local Laws (Baltimore City), that "if a defendant be returned 'summoned' [and he was in this case] and shall fail to appear, the clerk of the court on the day following the return day to which the writ or process served on him is returnable, shall enter the appearance of any defendant so summoned and fail-

ing to appear, and the action shall proceed in the same manner as if the party had appeared in person."

The authority cited by the plaintiff in support of its contention that the judgment in ejectment is void because of the failure to file an affidavit before the entry of final judgment is *Walter v. Alexander,* 2 Gill 204, which was a proceeding under the Statute of 4 Geo. 2, ch. 28. In that case the affidavit was filed "in vacation, at a different term from that of the judgment; and more than ten months after it was rendered, and which according to the proof was never shown to the county court." Under the Statute of 4 Geo. 2, ch. 28, the plaintiff was only entitled to recover nominal damages, and the proceeding could not be brought and judgment by default made conclusive, unless there was an affidavit filed showing a half year's rent to be due before the declaration was served, and this affidavit was the evidence required for the entry of judgment for the return of the premises and nominal damages. Now, however, since the Acts of 1872, ch. 346 (Code, art. 75, sec. 76), the plaintiff may recover as damages the mesne profits and damages sustained by him and caused by the ejectment and detention of the premises up to the time of the determination of the case (*Gibbs v. Didier,* 125 Md. 486, 497, 94 A. 100), so that, while the plaintiff might secure a judgment for the return of the premises and nominal damages by filing an affidavit, it certainly would require additional proof to sustain a claim for substantial damages. It would be an anomalous situation if both methods were required before an entry of judgment.

2 *Poe's Pl. & Pr.,* sec. 488, makes the statement that "judgment may be perfected so as to authorize execution upon it, and revest in the landlord his title to the premises, either by empanneling a jury and proving the case *ex parte,* or by filing an affidavit as to the facts it would have been necessary to prove at the trial if the defendant had appeared." Under rule 45 of the Supreme Court of Baltimore City, adopted in pursuance of the

authority of article 4, sec. 39, of the Constitution, it is provided that all civil cases may be tried by the court without a jury. The docket entry here is "judgment by default extended in open court." As the extension of a judgment in open court means on satisfactory proof produced to the judge or jury, we must assume that the court acted in accordance with the rule. *Watson v. Mc-Henry,* 107 Md. 245, 247, 68 A. 606; *Rasst v. Morris,* 135 Md. 243, 255, 108 A. 787.

If the statute had required the filing of an affidavit with the declaration, as an essential to the bringing of suit, a different situation would have been presented; the question of jurisdiction would have arisen. But we have no such question here. There is no contention that the court did not have jurisdiction of the subject-matter of the suit, nor of the parties. The statute requires evidence before the judgment by default can be made conclusive against the defendant in ejectment (*Walter v. Alexander, supra)*, and in our opinion such a judgment may be entered on the production of an affidavit, or by evidence produced in open court. The statutory provision for the filing of an affidavit, where the defendant in ejectment, under section 78, article 75 of the Code, does not appear, is, in our opinion, a rule of evidence which does not deny a plaintiff the right to produce evidence or prove his case in open court. It follows, therefore, that the decree appealed from will be affirmed.

*Decree affirmed, with costs.*